UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| ALMASHIA L JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 1:23-CV-150 SRW |
| ) | |
| MISSISSIPPI COUNTY, MISSOURI, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Defendants' Motion for Summary Judgment (ECF No. 26) and Defendants' Motion to Strike (ECF No. 40). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). The Court will grant the motion for summary judgment and deny the motion to strike as moot.

**I.     BACKGROUND**

While Plaintiff was detained at the Mississippi County Detention Center, she experienced a mental health crisis wherein she attempted to commit suicide. Officers of the detention center had to physically restrain her and remove her clothes, which she was attempting to use in her suicide attempt. In response, Plaintiff filed this lawsuit alleging the officers' actions violated her rights in violation of 42 U.S.C. § 1983 and state law. Plaintiff brings claims against Mississippi County, Mississippi County Sheriff Britton Ferrell, Michael Adams, Daniel Koch, Patrick Smith, Stacy Vinson, Amy Ross, and Joe Ross. Plaintiff brings her claims against Sheriff Ferrell in his official capacity, and her claims against the other individual defendants ("Officer Defendants") in their individual capacities.

1

Plaintiff asserts the following claims: (1) conspiracy to violate the Fourth Amendment for unreasonable searches and seizures pursuant to § 1983 against the Officer Defendants; (2) conspiracy to violate the Fourteenth Amendment Due Process clause pursuant to § 1983 against the Officer Defendants; (3) violation of the Fourth Amendment for failure to intervene pursuant to § 1983 against the Officer Defendants; (4) violation of the Fourteenth Amendment for failure to intervene pursuant to § 1983 against the Officer Defendants; (5) a *Monell*[1] claim against only Mississippi County and Sheriff Ferrell pursuant to § 1983; (6) Missouri law conspiracy to commit intentional infliction of emotional distress against the Officer Defendants; and (7) Missouri law conspiracy to commit battery against the Officer Defendants.

Defendants now seek dismissal of all of Plaintiff's claims asserting there is no evidence of a conspiracy to violate Plaintiff's rights, the Officer Defendants are entitled to qualified immunity, and Plaintiff cannot establish liability under *Monell*.

## II.   STANDARD

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating there are no genuine issues of material fact rests on the moving party, and the Court considers the evidence and reasonable inferences in the light most favorable to the nonmoving party. *Allard v. Baldwin*, 779 F.3d 768, 771 (8th Cir. 2015). To avoid summary judgment, the non-movant must demonstrate the existence of specific facts supported by

---

[1] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

2

sufficient probative evidence that would permit a finding in his favor on more than speculation. *Donathan v. Oakley Grain, Inc.*, 861 F.3d 735, 739 (8th Cir. 2017). Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Combs v. Cordish Cos.*, 862 F.3d 671, 680 (8th Cir. 2017).

**III.    UNDISPUTED MATERIAL FACTS**

Plaintiff was arrested in New Madrid County, Missouri on various charges. Consequently, on September 23, 2020, she was incarcerated at the Mississippi County jail. At the time of her arrest, Plaintiff was experiencing schizophrenic conditions or paranoid delusions and had been diagnosed with Bipolar II. At the time she was booked into the jail, Plaintiff was approximately two months pregnant. She was initially in a cell with five or six women. At one time, Plaintiff was locked in a different cell because she had gotten into an argument with another inmate and then argued with Sheriff Ferrell. After being in lock down for two or three days, she was put back in general population for a couple of days a week.

On October 8, 2020, Plaintiff was sent to Popular Bluff Hospital for a 96-hour mental health evaluation. She returned from the hospital on October 10. The following day, she was moved to holding cell 120 for medical observation. During the attempt to move Plaintiff to the holding cell, she ran into a broom closet and grabbed onto a ladder. It took two officers to pry Plaintiff from the ladder as Plaintiff was not cooperating with the officers and resisted their efforts to put her in the holding cell.

3

Once she was in the holding cell, Plaintiff jumped off the toilet headfirst and was caught by Defendants Koch and Adams. Before she jumped off the toilet, Plaintiff was yelling that she wanted to kill herself and her baby. After Defendants Koch and Adams caught Plaintiff, they put her in mechanical wrist restraints and handcuffed her to the bed to try and prevent her from harming herself. The mechanical restraints were eventually removed and replaced with zip lock restraints because the mechanical restraints were hurting Plaintiff's wrists.

After Plaintiff calmed down, she was left in the holding cell. Officers then observed her trying to hang herself with the leg restraint bolted to the wall. Before being placed in leg restraints, Defendant Vinson cut off Plaintiff's shirt and placed Plaintiff in a suicide suit.[2] Plaintiff resisted, and she was put on the floor of the cell to prevent her head from hitting the wall. Plaintiff kept stating she wanted to kill herself. Defendant Vinson requested other officers to assist her in attempting to de-escalate the situation with Plaintiff. Defendant Vinson and Defendant Amy Ross, a medical officer, removed Plaintiff's underwear and placed her in a suicide suit.

After the officers left the cell, they observed Plaintiff on the camera attempting to choke herself with the mechanical restraints. When Plaintiff tried to choke herself, the suicide suit came off and she was exposed. The jail suicide suit was then replaced with a paper suit. Defendant Amy Ross also placed Plaintiff in a padded helmet to prevent harm to Plaintiff's head after she tried to slam her head into the wall. Plaintiff would not calm down, she kept trying to harm herself, and she was screaming and being belligerent. Sergeant Michael Borders assessed the situation and determined Plaintiff needed to be removed from the jail.

---

[2] Plaintiff disputes this fact by citing to her affidavit wherein she states she was placed in a holding cell completely naked. This affidavit contradicts her deposition testimony wherein she stated Officer Vinson cut her clothes off. ECF No. 39-1, at 34. Because Plaintiff's affidavit contradicts her earlier deposition testimony, the Court will not consider her affidavit. *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 498-99 (8th Cir. 2008).

Plaintiff was transported to Missouri Delta Medical Center in Sikeston for a mental evaluation and a 96-hour commitment. There were no hospitals available, so Plaintiff was returned to the Mississippi County jail. On October 12, 2020, jail staff contacted Bootheel Counseling three times to see if they had any beds, and none had become available. While back in a holding cell on October 12, Plaintiff began throwing wet paper from her paper suicide suit at the camera. At this time, Plaintiff was naked. The video from the holding cell shows Plaintiff removing her paper suicide suit. Officers sprayed down her cell making it wet because there were feces all over the cell that Plaintiff had thrown at the camera and cell door window. On October 13, Plaintiff was put in a turtle suit because she said she was cold. On October 15, she was released from the jail by Defendant Adams on a ROR bond.

The Mississippi County jail has a policy concerning the establishment and creation of a detention file for each detainee/inmate booked into the jail. It also has a use of force policy.

## IV.   DISCUSSION

In her complaint, Plaintiff asserts seven claims and Defendants seek summary judgment on all seven claims. Defendants assert Plaintiff has produced no evidence that Mississippi County or Sheriff Britton Ferrell failed to train, supervise, discipline, transfer, monitor, counsel, or otherwise control officers who remove detainees' clothing, conduct strip searches, use excessive force in removal of undergarments from a detainee, or leave a detainee naked during incarceration. The Officer Defendants argue they have not violated Plaintiff's Fourth and Fourteenth Amendment rights and, further, are entitled to qualified immunity because there was no clearly established right that applies to this situation. Finally, Defendants assert they are entitled to summary judgment on Plaintiff's state law claims because Plaintiff cannot establish a civil conspiracy.

### A.      Claims brought pursuant to 42 U.S.C. § 1983 against the Officer Defendants

Plaintiff brings four of her claims against the Officer Defendants under 42 U.S.C. § 1983. She alleges the Officer Defendants conspired to violate her Fourth Amendment right to be free from unreasonable searches and seizures, conspired to violate her right to due process of law under the Fourteenth Amendment, failed to intervene to prevent unconstitutional violence in violation of the Fourth Amendment, and failed to intervene to prevent due process violations in violation of the Fourteenth Amendment.

To state a claim under § 1983, Plaintiff must show "[s]he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013). The Officer Defendants assert they are entitled to qualified immunity. Qualified immunity "shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). Officials are entitled to qualified immunity under § 1983 unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at that time." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (internal quotation omitted). When deciding whether a defendant is entitled to qualified immunity, a court may address either prong of the qualified immunity inquiry first. *See Robbins v. City of Des Moines*, 984 F.3d 673, 678 (8th Cir. 2021).

In *Wesby* the Supreme Court discussed the "clearly established" prong in great detail:

> "Clearly established" means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate. This demanding standard protects all but the plainly incompetent or those who knowingly violate the law.

6

> To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent. The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority. It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply. Otherwise, the rule is not one that every reasonable official would know.
>
> The "clearly established" standard also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him. The rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. This requires a high degree of specificity. We have repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced. A rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established.

*Id. at* 63–64 (internal quotations and citations omitted).

### 1. Conspiracy Claims

In counts one and two of her complaint, Plaintiff asserts the Officer Defendants conspired to violate her right to be free from unreasonable searches and seizures as provided in the Fourth Amendment and conspired to violate her right to due process under the Fourteenth Amendment. Plaintiff alleges the Officer Defendants "unlawfully, unreasonably, and deliberately threw Plaintiff to the ground, violently attacked and restrained her, forcibly stripped her of her undergarments and clothing, and/or forced her to remain naked during her detention at the MCDC." ECF No. 1, at 6-7.

To succeed on a conspiracy claim under § 1983, Plaintiff must show that the Officer Defendants conspired to deprive Plaintiff of her constitutional rights, at least one of the alleged coconspirators engaged in an overt act in furtherance of the conspiracy, and she was injured by that overt act. *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 850 (8th Cir. 2013). Each participant in a conspiracy does not need to know the

7

exact limits of the plan, but Plaintiff "must show evidence sufficient to support the conclusion that [the Officer Defendants] reached an agreement to deprive [Plaintiff] of constitutionally guaranteed rights." *Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 798-99 (8th Cir. 2013) (quoting *White v. McKinley*, 519 F.3d 806, 816 (8th Cir. 2008)). "There can be no civil conspiracy without an underlying constitutional violation." *Wolf v. City of Brooklyn Center*, 107 F.4th 854, 860 (8th Cir. 2024).

Plaintiff has not provided any evidence to even suggest, much less prove, that the Officer Defendants agreed to deprive Plaintiff of any of her constitutionally guaranteed rights. Even though the elements of a conspiracy "are rarely established through means other than circumstantial evidence," Plaintiff must still provide some evidence from which a "jury could infer from the circumstances a 'meeting of the minds' or understanding among the conspirators to achieve the conspiracy's aims." *White*, 519 F.3d at 816 (quoting *Larson by Larson v. Miller*, 76 F.3d 1446, 1458 (8th Cir. 1996)). "[M]ere cooperation between entities is not 'evidence of *specific facts* that show a 'meeting of the minds.''" *Mendoza v. U.S. Immigr. & Customs Enf't*, 849 F.3d 408, 422 (8th Cir. 2017) (quoting *Crutcher-Sanchez v. Cty. of Dakota*, 687 F.3d 979, 987 (8th Cir. 2012) (emphasis in original)). Plaintiff has not provided any evidence of specific facts that show a meeting of the minds between the Officer Defendants to throw Plaintiff to the ground, attack her, strip her of her clothing, or leave her naked in a holding cell as she alleges. The Court is "convinced that the evidence presented is insufficient to support any reasonable inference of a conspiracy." *White*, 519 F.3d at 816.

Without any evidence to support an agreement between Defendant Officers to violate Plaintiff's constitutional rights, Defendants are entitled to qualified immunity because Plaintiff has failed to establish a constitutional violation. Plaintiff has also not provided any case law to

show that any alleged constitutional violation is clearly established. The Court must grant summary judgment to the Officer Defendants and dismiss Plaintiff's claims asserting the Officer Defendants conspired to violate her constitutional rights under the Fourth and Fourteenth Amendment.

### 2. Failure to Intervene Claims

In counts three and four of her complaint, Plaintiff asserts the Officer Defendants failed to intervene to prevent the unconstitutional physical violence, unconstitutional search, and the due process violations to which the Officer Defendants subjected Plaintiff in violation of the Fourth and Fourteenth Amendments.

The Eighth Circuit has not recognized a failure to intervene claim outside of the Fourth Amendment excessive force context. *Shrouf v. Adair Cty., Mo.*, 2023 WL 3002420 at *4 (E.D. Mo. Apr. 19, 2023) (citing *Hess v. Ables*, 714 F.3d 1048, 1052 (8th Cir. 2013). Therefore, Plaintiff's claims against the Officer Defendants for a failure to intervene under the Fourteenth Amendment are not viable. Thus, the Court must grant summary judgment in favor of the Officer Defendants and dismiss Plaintiff's failure to intervene claim under the Fourteenth Amendment.

As for Plaintiff's claim for a failure to intervene under the Fourth Amendment, the Eighth Circuit has held that an officer who fails to intervene to prevent the unconstitutional use of excessive force by another officer may be held liable for violating the Fourth Amendment. *Nance v. Sammis*, 586 F.3d 604, 612 (8th Cir. 2009). To establish a failure to intervene claim, Plaintiff must show each officer "observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985, 991 (8th Cir. 2015) (quoting *Nance*, 586 F.3d at 612). Thus, Plaintiff must first establish the use of excessive force by an

9

officer before another officer can be found to have failed to intervene to prevent the use of the excessive force. *Zubrod v. Hoch*, 907 F.3d 568, 580 (8th Cir. 2018).

Plaintiff has not provided any evidence to establish any officer used excessive force against her. The undisputed facts show that Plaintiff was experiencing a mental health crisis while detained at the jail. During this crisis, Plaintiff attempted to commit suicide several times. She also refused to obey jail staff, actively resisted their efforts to keep her safe, and at one point ran into a closet and held onto a ladder in an attempt to obstruct the efforts of jail staff to put her in a holding cell. The Court does not have any evidence before it showing that the Officer Defendants used excessive force against Plaintiff in their attempts to keep Plaintiff safe.

In her opposition brief, Plaintiff argues there is a genuine dispute of material fact as to whether Plaintiff was observed while completely naked by male jail staff and her brother. Plaintiff's allegations that male individuals observed her naked may support a claim for a violation of her Fourth Amendment privacy rights, but do not in any way support a claim for the use of excessive force. *See Hill v. McKinley*, 311 F.3d 899 (8th Cir. 2002) (deciding a Fourth Amendment privacy claim alleging male officers saw a female plaintiff naked); *Timm v. Gunter*, 917 F.2d 1093 (8th Cir. 1990) (deciding a constitutional claim for violation of inmates' right to privacy when officers of the opposite sex viewed nude inmates). The Eighth Circuit has not recognized a failure to intervene to prevent the abuse of someone's privacy rights. The Eighth Circuit has only recognized a failure to intervene claim in the context of excessive force; thus, a claim for failure to intervene to prevent a violation of Plaintiff's privacy is not actionable. *Shrouf*, 2023 WL 3002420 at *4.

Because Plaintiff has not provided any evidence to support any Defendant used excessive force against her, the Officer Defendants cannot be liable for a failure to intervene to prevent the

10

use of excessive force. The Officer Defendants are entitled to qualified immunity because Plaintiff has not shown a constitutional violation. The Court will grant summary judgment to the Officer Defendants on counts three and four of Plaintiff's complaint.

### B. *Monell* Claim against Mississippi County

In count five of Plaintiff's complaint, she alleges Mississippi County and Mississippi County Sheriff Britton Ferrell "failed to train, supervise, transfer, monitor, counsel, and otherwise control officers regarding, *inter alia*, (a) Missouri law regarding restrictions on stripping detainees and the permissible method of conducting strip searches, and (b) the unconstitutionality of the use of excessive force and stripping the undergarments and clothing from an individual or leaving an individual unclothed and naked during his or her detention at the MCDC." ECF No. 1, at 10.

A municipality can be sued under § 1983 for an officer's misconduct where the misconduct is alleged to have implemented or executed a policy, ordinance, regulation, decision, or custom of the municipality. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). A municipality cannot be held liable under § 1983 on a respondeat superior theory. *Id*. at 691. When a plaintiff sues an officer in his/her official capacity, it "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Plaintiff brought suit against Sheriff Ferrell in his official capacity; thus, the claim against him is, in all respects other than name, a claim against Mississippi County. *Id*. at 166.

To establish a claim against a municipality for a failure to train or supervise, Plaintiff must show the inadequacy of Mississippi County's training and supervision "amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *City*

11

*of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989) (referring to § 1983 liability for a failure-to-train); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013) ("A claim for failure to supervise requires the same analysis as a claim for failure to train."). To show deliberate indifference, Plaintiff must prove Mississippi County had notice that its training and supervision was "inadequate and likely to result in a violation of constitutional rights." *Jennings v. Wentzville R-IV Sch. Dist.*, 397 F.3d 1118, 1122 (8th Cir. 2005). Notice may be implied if the failure to train or supervise "is so likely to result in a constitutional violation that the need for training [or supervision] is patently obvious," or there is a pattern of misconduct putting the municipality on notice. *Id*.

Plaintiff has not provided any evidence of inadequate training or supervision, any evidence to establish deliberate indifference, or any evidence of a pattern of unconstitutional acts to put Mississippi County on notice that it has inadequate training or supervision. In support of her claim, Plaintiff points to an affidavit she filed from Defendant Joe Ross, which is the subject of a motion to strike filed by Defendants, asserting that this affidavit establishes that Mississippi County had inadequate training because it does not have a policy addressing mental health.

In Defendant Ross' affidavit, he states, "there has never been a written policy concerning mental health or pregnant inmates there." ECF No. 35-2. This statement clearly contradicts the documentary record showing the Mississippi County Sheriff Office's policy on suicide prevention at the Mississippi County jail. ECF No. 27-1, at 6-9. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Defendant Ross' affidavit does not create a genuine issue of material fact on the existence of a policy when no

12

reasonable jury would believe his affidavit in the face of the documentary evidence showing otherwise.

To further support her claims, Plaintiff states in her response brief that her "Complaint speaks for itself." ECF No. 25, at 3. At summary judgment, "[m]ere allegations … are not enough." *Lambert v. City of Dumas*, 187 F.3d 931, 935 (8th Cir. 1999) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). Plaintiff must point to specific facts showing deliberate indifference by Mississippi County to create a genuine issue for trial on her *Monell* claims, and she has not done so. The Court will grant summary judgment to Mississippi County and Sheriff Ferrell on this claim.

### C.     State Law Claims

In counts six and seven of her complaint, Plaintiff asserts claims against the Officer Defendants for a conspiracy to commit intentional infliction of emotional distress and a conspiracy to commit battery. To establish a conspiracy under Missouri law, Plaintiff must show two or more persons, with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy, and Plaintiff was damaged as a result. *Pony Comput., Inc. v. Equus Comput. Sys. of Mo., Inc.*, 162 F.3d 991, 998 (8th Cir. 1998) (citing *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. 1996)). To establish a claim for intentional infliction of emotional distress, Plaintiff must show the Officer Defendants acted intentionally or recklessly, their conduct was extreme and outrageous, and their conduct caused severe emotional distress resulting in bodily harm. *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 321 (Mo. Ct. App. 2010). To establish a claim for battery, Plaintiff must show the Officer Defendants had "intended, offensive, bodily contact with [Plaintiff]." *Duvall v. Lawrence*, 86 S.W.3d 74, 80 (Mo. Ct. App. 2002).

13

As with her § 1983 conspiracy claims, Plaintiff has not provided any evidence showing a meeting of the minds between the Officer Defendants. Nor has she provided any evidence establishing intentional infliction of emotional distress or battery. To avoid summary judgment, Plaintiff must demonstrate the existence of specific facts supported by sufficient probative evidence that would permit a finding in her favor on more than speculation. *Donathan*, 861 F.3d at 739. Plaintiff has failed to do so. For this reason, the Court will grant summary judgment to the Officer Defendants on counts six and seven of Plaintiff's complaint.

V.    **MOTION TO STRIKE**

Defendants filed a motion to strike Defendant Joe Ross' affidavit that Plaintiff attached to her response in opposition to Defendants' motion for summary judgment. According to Defendants, Plaintiff's counsel communicated with Defendant Ross, who is represented by defense counsel, without the consent or authorization of defense counsel or the Court, in violation of Missouri Rule of Professional Conduct 4-4.2 and Local Rule 12.02. Plaintiff's counsel asserts he received the affidavit unsolicited and his only communication with Defendant Ross was to tell him to document his concerns about the jail and share them with his attorney.

The use of an affidavit from a defendant without defense counsel's knowledge of its existence, whether solicited or unsolicited by Plaintiff's counsel, is concerning. To determine if an ethical violation occurred and if the affidavit should be stricken would require a hearing to learn the exact details surrounding Plaintiff's counsel's receipt of the affidavit. However, the Court finds a hearing is not necessary in this case because the Court did not rely on the affidavit in deciding Defendants' motion for summary judgment. Nothing in Defendant Ross' affidavit creates a genuine issue of material fact that bears on the Court's determination of the issues

raised in Defendants' motion for summary judgment. For this reason, the Court will deny Defendants' motion to strike as moot.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 26) is **GRANTED**. Plaintiff's complaint is **DISMISSED**, **with prejudice**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike (ECF No. 40) is **DENIED**, as moot.

A separate judgment will be entered in accordance with this order.

So Ordered this 4th day of November, 2024.

_____
**STEPHEN R. WELBY**
**UNITED STATES MAGISTRATE JUDGE**